UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EMÖKE BEICKERT and
STEPHANIE KUSHNER,

                          Plaintiffs,

              v.

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                    Defendant.

**Case No. 22-CV-5265**

**COMPLAINT**

**ECF CASE**

      COME NOW PLAINTIFFS Emöke Beickert and Stephanie Kushner, by their undersigned attorneys, for their complaint against Defendant New York City Department of Education, and alleging as follows:

## NATURE OF THE ACTION

      1.    This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiffs' sincerely held religious objections to a mandatory COVID-19 vaccination policy, wrongly denied their requested religious exemptions, and as a result illegally terminated their employments. This is not an action challenging the legality of the policy itself. By this action, Plaintiffs seek all legal and equitable relief available, including back pay, front pay/reinstatement, out of pocket costs, compensatory damages, attorney's fees and costs, and appropriate injunctive relief. Plaintiffs demand trial by jury.

## PARTIES

2.      Plaintiff **Emöke Beickert** is an adult resident of Huntington, New York.  At all relevant times, Beickert was an "employee" of Defendant within the meaning of Title VII.

3.      Plaintiff **Stephanie Kushner** is an adult resident of Bayville, New York.  At all relevant times, Kushner was an "employee" of Defendant within the meaning of Title VII.

4.      Defendant **New York City Department of Education (DOE)** is a local government agency that operates the New York City public school system.  At all relevant times, DOE had more than 500 employees.  At all relevant times, DOE was Plaintiffs' "employer" within the meaning of Title VII.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

6.      This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

7.      Plaintiffs properly exhausted their administrative remedies under Title VII prior to filing this action.

8.      On February 23, 2022, within 180 days of the alleged discriminatory acts, Beickert filed a charge of discrimination against DOE with the U.S. Equal

Employment Opportunity Commission. The charge was assigned charge number 520-2022-04100.

9. On July 1, 2022, the U.S. Department of Justice (to which agency the charge was assigned because it involved a government respondent) issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit A.

10. This action was filed within 90 days of Beickert's receipt of the Notice of Right to Sue.

11. On January 10, 2022, within 180 days of the alleged discriminatory acts, Kushner filed a charge of discrimination against DOE with the U.S. Equal Employment Opportunity Commission. The charge was assigned charge number 520-2022-02894.

12. On June 21, 2022, the U.S. Department of Justice (to which agency the charge was assigned because it involved a government respondent) issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit B.

13. This action was filed within 90 days of Kushner's receipt of the Notice of Right to Sue.

**ALLEGATIONS: EMÖKE BEICKERT**

14. Beickert was employed by DOE from September 2, 2002, until her termination on February 18, 2022.

15. Beickert was on Leave Without Pay (LWOP) status and not allowed to report to her school site beginning October 2, 2021.

16. Beickert was a full-time school psychologist, most recently at Nathaniel Hawthorne Middle School in Bayside, New York (Queens County).

17.     At all relevant times, Beickert was qualified for her position and performed her duties in a satisfactory manner

18.     On August 23, 2021, Beickert was notified that "[e]ffective September 27, all DOE employees are required to provide proof that they have received at least one dose of the COVID-19 vaccine."  At the time of the initial announcement, it was unclear what would happen to employees who did not comply with the policy and whether religious and/or medical exemptions would be available.  The teacher's union invoked impact bargaining on these issues.

19.     On September 10, 2021, the impact bargaining was decided by the arbitrator, who adopted a set of procedures for requesting exemptions to the covid vaccine policy and appealing denials of such exemptions.  As relevant here, the procedures for religious exemptions provided that they "must be documented in writing by a religious official" and "shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature."  This arbitration decision ultimately was vacated as a result of federal court litigation.

20.     Beickert observes the Christian faith.

21.     On September 17, 2021, Beickert submitted a request for a religious exemption to the COVID-19 vaccination policy, based on the biblical teaching that "my body is the temple of the Holy Spirit and I do not want to knowingly harm it by accepting an unclean vaccine."  As Beickert explained in her statement, "[b]ecause all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines . . . my sincerely held religious beliefs compel me to abstain from accepting or

injecting any of these products into my body . . . ."  Beickert further explained that it is her sincerely held religious belief that abortion is murder, which is supported by Scripture (to which she provided multiple citations) and the history of Christian teaching (to which she provided multiple citations), and "it would violate my sincerely held religious beliefs to cooperate with or be complicit in abortion in any way."  For these reasons, Beickert concluded, accepting any of the currently available COVID-19 vaccines "would constitute a sin against God and a violation of His Commandments, for which I would be held morally accountable by God."

22.     Beickert supported her request for a religious exemption with a statement from the Reverend of the church she attended at that time, who confirmed that the church's Statement of Faith "includes a belief in the sanctity of human life" and provided two pages of "foundational teaching of Bethel [that] demonstrates a religious basis on which Emoke asserts a principled religious objection to the current COVID-19 vaccines."

23.     On September 22, 2021, Beickert was notified by form letter that her request for a religious exemption was denied.  The only reason given was that her application "failed to meet the criteria for a religious based accommodation," but no explanation was provided.  She was given one school day in which to appeal.

24.     DOE's proffered justification for denying Beickert's religious exemption is baseless, is contradicted by her personal statement and supporting letter, and clearly demonstrates DOE's failure to review her application in good faith, if at all.

25.     Significantly, DOE did not state that Beickert's exemption was denied because it would have caused an undue hardship.

26.     Beickert appealed this decision on September 24, 2021, pursuant to the arbitration decision that was then in place.  In support of her appeal, she submitted a lengthy and detailed personal statement, reiterating her sincerely held religious beliefs, pointing out that the DOE failed to afford her a careful, individualized review, and noting that some employees were granted religious exemptions but not others for apparently arbitrary reasons.  She was not given a hearing for this appeal.

27.     Beickert's appeal was denied by the arbitrator, without explanation, on September 28, 2021.  She subsequently requested that the decision be reviewed and that she be given a hearing, but she never received a response.

28.     On October 2, 2021, Beickert received an email from DOE Human Capital stating that she was being placed on LWOP, and was prohibited from reporting to her school site on October 4 (Monday), "because you are not in compliance with the DOE's COVID-19 Vaccine Mandate."   The email further explained that while on LWOP, Beickert cannot work or receive compensation, cannot enter her work or school site, cannot use annual leave, CAR (cumulative absence reserve) or sick time, and cannot communicate with students or families. The October 2 email explained that to return from LWOP status, Beickert must "upload proof that you have received your first dose of a COVID-19 vaccine."

29.     On November 19, 2021, Beickert received an email from DOE Human Capital informing her that she would be allowed to submit a new appeal to a Citywide Panel (which was established as a result of federal court litigation over the existing arbitration appeal procedures).  The email stated that "[w]hile your new appeal is pending you will remain on Leave Without Pay status."  The email stated

that there was no need to re-submit any materials already included in her initial application or arbitration appeal, but she could submit new documentation.

30.     Beickert appealed the denial of her religious exemption to the Citywide Panel on November 29, 2021.  Along with her previously submitted materials, she included another personal statement, emphasizing the importance of her position to her students, her ability to perform her job duties remotely (which she had done throughout the pandemic), and the lack of undue hardship or additional cost to the DOE for granting her a reasonable accommodation.  She was not given a hearing for this appeal.

31.     On January 7, 2022, Beickert received an email from DOE Human Resources asking for more information about her request for a religious exemption, including questions about previous vaccinations she had received and "other medications or vaccinations" she had declined on the grounds that they were developed using fetal cells.  Beickert submitted her answers to the questions on January 13, 2022, including noting that she has not had any vaccines as an adult in the past 20 years and that she had decided based on her religious faith not to have the chickenpox vaccine (which was developed with fetal cell derivatives) given to her or her children.

32.     On January 26, 2022, Beickert was notified by email that the Citywide Panel "has decided to deny your appeal."  The only reason given was "Agency undue hardship," but no further explanation was provided.

33.     DOE never engaged in a good faith interactive process with Beickert to determine whether or not her religious exemption should be granted.

34.     DOE never questioned or denied the sincerity of Beickert's religious objections to the COVID-19 vaccines.

35.     DOE never conducted an individualized review of Beickert's job site or job duties to determine if her religious objections to the COVID-19 vaccines could be reasonably accommodated.

36.     It would not have caused an undue hardship on the conduct of DOE's business to grant Beickert the religious exemption.

37.     During the September 2020 to June 2021 school year, Beickert successfully followed extensive COVID-19 safety protocols, including: daily health screening; wearing a face mask and shield while inside the school building; social distancing; conducting parent and student meetings remotely; conducting classroom observations remotely; conducting assessments and re-evaluations of students remotely; and weekly COVID-19 testing once the vaccine mandate was announced (always negative).   Importantly, Beickert was able to perform her job duties via remote work arrangements.   All of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

38.     It would not have caused an undue hardship to allow Beickert to continue to follow these or similar precautions – including but not limited to remote work arrangements – in lieu of the mandatory COVID-19 vaccination policy.

39.     To the best of her knowledge, Beickert is aware of teachers whose requests for religious exemptions were granted by DOE, including remote work arrangements.   Furthermore, there were news reports that DOE granted hundreds of exemptions to the mandatory COVID-19 vaccination policy.   If other teachers were granted exemptions, it would not have caused an undue hardship to grant Beickert an exemption.

40.     On February 3, 2022, Beickert received an email from DOE Human Resources explaining she had two available options for (1) returning from LWOP by

getting the vaccine or (2) extending LWOP with health insurance coverage through September 6, 2022, by waiving her legal rights.  In the absence of either option, she was informed that "you are subject to termination from service with the NYCDOE."

41.     Beickert did not agree to either option, neither getting the vaccine nor waiving her legal rights in exchange for continued health insurance coverage.

42.     On February 18, 2022, Beickert received an email from DOE Human Resources informing her that her employment was terminated for "failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff."

43.     From March 2022 to June 2022, Beickert worked on a temporary basis as a school psychologist for Hiawatha Valley Education District in Winona, Minnesota, which was performed fully remotely, and also for BOCES @ Baldwin High School @ Shubert in Baldwin, New York, which was performed in-person. Neither position required COVID-19 vaccination.  Beickert has been rehired by both schools for the current school year, but continues to look for a full-time position with comparable pay and benefits to her previous DOE position.

44.     This entire experience has caused Beickert significant mental and emotional distress and financial hardship.

## ALLEGATIONS:  STEPHANIE KUSHNER

45.     Kushner was employed by DOE from September 17, 1999, until her termination on February 11, 2022.

46.     Kushner was on Leave Without Pay (LWOP) status and not allowed to report to her school site beginning October 2, 2021.

47.     Kushner was a full-time special education teacher, most recently at Nathaniel Hawthorne Middle School in Bayside, New York (Queens County).

48.     At all relevant times, Kushner was qualified for her position and performed her duties in a satisfactory manner.

49.     On August 23, 2021, Kushner was notified that "[e]ffective September 27, all DOE employees are required to provide proof that they have received at least one dose of the COVID-19 vaccine."  At the time of the initial announcement, it was unclear what would happen to employees who did not comply with the policy and whether religious and/or medical exemptions would be available.  The teacher's union invoked impact bargaining on these issues.

50.     On September 10, 2021, the impact bargaining was decided by the arbitrator, who adopted a set of procedures for requesting exemptions to the covid vaccine policy and appealing denials of such exemptions.  As relevant here, the procedures for religious exemptions provided that they "must be documented in writing by a religious official" and "shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature."  This arbitration decision ultimately was vacated as a result of federal court litigation.

51.     Kushner observes the Jewish faith.

52.     On September 20, 2021, Kushner submitted a request for a religious exemption to the COVID-19 vaccination policy, based on the biblical teaching "You should be very careful to protect your life." (Deuteronomy 4:15)  As she explained in her statement, this means that "I must care for my body and do nothing that I believe may jeopardize my health."  Kushner believes that longer term testing, as

with other vaccines and drugs, is necessary to ensure that the currently available COVID-19 vaccines are truly safe and effective and will not adversely affect her health.  Along with her request for a religious exemption, Kushner certified that she "will comply with any other preventative requirements such as COVID-19 testing, masks, etc. to maintain the safety of my school in order to continue my beloved profession – teaching the children of our great city."

53.     On September 22, 2021, Kushner was notified by form letter that her request for a religious exemption was denied.  The only reason given was that her application "failed to meet the criteria for a religious based accommodation," but no explanation was provided.  She was given one school day in which to appeal.

54.     DOE's proffered justification for denying Kushner's religious exemption is baseless, is contradicted by her personal statement, and clearly demonstrates DOE's failure to review her application in good faith, if at all.

55.     Significantly, DOE did not state that Kushner's exemption was denied because it would have caused an undue hardship.

56.     Kushner appealed this decision on September 23, 2021, pursuant to the arbitration decision that was then in place.  In support of her appeal, Kushner emphasized that DOE "do[es] not have the right to deny me of my Constitutional right to practice my religious beliefs which are guaranteed by the First Amendment of the Constitution of the United States of America" and reiterated that she "will comply with any other preventive requirements . . . ."  She was not given a hearing for this appeal.

57.     Kushner's appeal was denied by the arbitrator, without explanation, on September 28, 2021.  She emailed the arbitration company on September 29, 2021, requesting an in-person hearing.  The arbitration company responded the next

day, stating only that "[t]he arbitrator who reviewed your case has made the determination you have received" and directing any further questions to the union.

58.     Kushner did not pursue any other avenues of appeal.

59.     On September 9, 2021, Kushner received an email from the DOE "Vaccination Portal Team" reminding her that she was required to submit proof of at least one dose of the COVID-19 vaccine by September 27.  The email further explained that she was "also expected to receive your 2nd dose within 45 days of the first dose to remain compliant."

60.     Kushner received the same email notice on September 10 and September 22, 2021.

61.     On September 24, 2021, Kushner received an email from the DOE "Vaccination Portal Team" reminding her about the September 27 deadline and informing her that "[i]f you fail to meet this deadline, you will be removed from payroll and placed on Leave Without Pay status (LWOP) beginning Tuesday, September 28, unless you are on an approved vaccine exemption or leave."

62.     Kushner received a similar email notice on September 28, 2021, which extended the deadline to submit proof of vaccination to October 1, 2021, with LWOP starting October 4.  She received the same email notice on September 30, 2021.

63.     On October 2, 2021, Kushner received an email from DOE Human Capital stating that she was being placed on LWOP, and was prohibited from reporting to her school site on October 4 (Monday), "because you are not in compliance with the DOE's COVID-19 Vaccine Mandate."  The email further explained that while on LWOP, Kushner cannot work or receive compensation, cannot enter her work or school site, cannot use annual leave, CAR (cumulative absence reserve) or sick time, and cannot communicate with students or families.

The October 2 email explained that to return from LWOP status, Kushner must "upload proof that you have received your first dose of a COVID-19 vaccine."

64.     On November 2, 2021, Kushner received an email from DOE Human Capital explaining she had two available options for (1) returning from LWOP by getting the vaccine or (2) extending LWOP with health insurance coverage through September 6, 2022, by waiving her legal rights.  In the absence of either option, she was informed that "the DOE will seek to unilaterally separate you from service beginning December 1, 2021."

65.     Kushner did not agree to either option, neither getting the vaccine nor waiving her legal rights in exchange for continued health insurance coverage.

66.     DOE never engaged in a good faith interactive process with Kushner to determine whether or not her religious exemption should be granted.

67.     DOE never questioned or denied the sincerity of Kushner's religious objections to the COVID-19 vaccines.

68.     DOE never conducted an individualized review of Kushner's job site or job duties to determine if her religious objections to the COVID-19 vaccines could be reasonably accommodated.

69.     It would not have caused an undue hardship on the conduct of DOE's business to grant Kushner the religious exemption.

70.     During the September 2020 to June 2021 school year, Kushner followed rigorous COVID-19 safety protocols, including:  She completed a health questionnaire daily; she wore a mask during the entire workday (she voluntarily double-masked); and she socially distanced (6 feet) from students and colleagues, to the extent feasible.  She also regularly used hand sanitizer and wiped down computers, telephones, and whiteboard markers with sanitizing wipes.  She also

voluntarily went to get tested for COVID-19 each time her Principal emailed her that she had been in close contact with another person who tested positive for COVID-19 (including on March 29, 2021; May 9, 2021; and May 14, 2021). Beginning in September 2021, because she is "unvaccinated," she also was required to be tested for COVID-19 once per week (including on September 17, 2021; September 22, 2021; and September 29, 2021). All of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

71. It would not have caused an undue hardship to allow Kushner to continue to follow these or similar precautions in lieu of the mandatory COVID-19 vaccination policy.

72. To the best of her knowledge, Kushner is aware of teachers whose requests for religious exemptions were granted by DOE, including remote work arrangements. Furthermore, there were news reports that DOE granted hundreds of exemptions to the mandatory COVID-19 vaccination policy. If other teachers were granted exemptions, it would not have caused an undue hardship to grant Kushner an exemption.

73. On January 31, 2022, Kushner received an email from DOE Division of Human Resources informing her that her employment was terminated, effective February 11, 2022, for "failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff."

74. Currently Kushner is unemployed.

75. This entire experience has caused Kushner significant mental and emotional distress and financial hardship.

## NO UNDUE RISK TO OTHER PERSONS

76.     On or about January 31, 2022, DOE submitted a position statement in response to Kushner's EEOC charge of discrimination.   (Upon information and belief, DOE did not submit a position statement in response to Beickert's charge.)

77.     In the position statement, DOE does not question or deny the sincerity of Kushner's religious objections to the COVID-19 vaccines.

78.     The focus of DOE's defense to Kushner's charge is that "[a]llowing such employees to remain in school settings unvaccinated, even with other safeguards like masking and testing, would present an unacceptable risk to schoolchildren, staff, and others."  Presumably this will be the same argument DOE will employ in defense of this lawsuit.  This is pure speculation and fear-mongering.

79.     It would not have caused an undue risk to students, staff, and others of catching COVID-19 to allow Kushner to continue following the same health and safety protocols – testing, masking, social distancing, and sanitizing – that were in place before DOE announced its mandatory vaccination policy.  Prior to the mandatory vaccination policy, these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

80.     Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective.  On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be *less virulent* than previous waves have been.

81.     Upon information and belief, DOE has no scientific studies, data, or other objective evidence demonstrating that an employee who follows the same health and safety protocols that were in place before DOE announced its mandatory

vaccination policy, but who is not vaccinated, poses an increased risk of spreading COVID-19 to students, staff, and others.   This is pure speculation and fear-mongering.

82.   Indeed, it is possible that unvaccinated teachers who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious – and therefore can quarantine and be less likely to transmit the virus unknowingly – than vaccinated teachers who do not undergo regular testing.

83.   Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus.

84.   On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it.  But what they can't do anymore is prevent transmission."

85.   This was confirmed recently by Dr. Deborah Birx, former White House Coronavirus Response Coordinator, who told Fox News on July 22, 2022, that she "knew these vaccines were not going to protect against infection. . . ."

86.   Even Dr. Anthony Fauci has admitted, during an interview with Fox News on July 12, 2022, that the "vaccines – because of the high degree of transmissibility of this virus – don't protect overly well, as it were, against infection . . . ."

87.   Furthermore, for the vast majority of people who catch COVID-19, there is only a small risk of serious illness and an even smaller risk of death.

88.   A CDC report titled "Estimated COVID-19 Burden," updated on November 16, 2021, "provides estimates of COVID-19 infections, symptomatic illnesses, hospitalizations, and deaths using statistical models to adjust for cases

that national surveillance networks do not capture for a number of reasons." In this report, the CDC estimated that in the United States from February 2020 to September 2021, there were approximately 146.6 million total COVID-19 infections; 124.0 million symptomatic illnesses [84.6% of total infections]; 7.5 million hospitalizations [5.12% of total infections]; and 921,000 total deaths [.63% of total infections].

89.     Table 1 of this report provided "[p]reliminary estimated COVID-19 cumulative incidence, by age group" for the same time period. The data presented in Table 1 showed that for persons with COVID-19 infections, the percentages who suffered hospitalizations and deaths, respectively, were 1.03% and .0025% for ages 0-17; 2.66% and .080% for ages 18-49; 7.33% and .58% for ages 50-64; and 17.94% and 3.89% for ages 65 and older.

90.     Another CDC report titled "Risk for COVID-19 Infection, Hospitalization, and Death by Age Group," dated July 19, 2021, showed that the relative risk of hospitalization and death due to COVID-19 was significantly greater among persons in the 75-84 and 85+ age groups. Subsequent updates to this report confirmed these findings. In other words, the persons at greatest risk of becoming seriously ill or dying from COVID-19 are (or were) the least likely to be encountered by Plaintiffs in the workplace.

91.     Middle school students are in the age group with the lowest risk of becoming seriously ill or dying from COVID-19.

92.     In short, there is no objective, scientific basis for DOE to argue that granting Plaintiffs a religious exemption to the COVID-19 vaccination policy would have posed an "unacceptable risk" to students, staff, and others of becoming sick from COVID-19. This is pure speculation and fear-mongering.

## COUNT ONE:  VIOLATION OF TITLE VII (BEICKERT)

93.    By denying her request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Beickert's rights under Title VII.

94.    Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

95.    Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ."  *Trans World Airlines, Inc. v. Hardinson*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

96.    Defendant was recklessly indifferent to Beickert's federally protected rights.

97.    As a direct and proximate result of Defendant's discriminatory conduct, Beickert has suffered pecuniary and non-pecuniary damages, including lost

income and benefits and mental and emotional distress, for which she is entitled to an award of back pay, front pay/reinstatement, out of pocket costs, compensatory damages, attorney's fees and costs, and appropriate injunctive relief.

### COUNT TWO:  VIOLATION OF TITLE VII (KUSHNER)

98.     By denying her request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Kushner's rights under Title VII.

99.     Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

100.     Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ."  *Trans World Airlines, Inc. v. Hardinson*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

101.    Defendant was recklessly indifferent to Kushner's federally protected rights.

102.    As a direct and proximate result of Defendant's discriminatory conduct, Kushner has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled to an award of back pay, front pay/reinstatement, out of pocket costs, compensatory damages, attorney's fees and costs, and appropriate injunctive relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff respectfully prays that the Court enter judgment against Defendant on her claim under Title VII, and award her the following relief:

A.    Back pay in an amount to be determined at trial;

B.    Front pay (or reinstatement) in an amount to be determined at trial;

C.    Out of pockets costs in an amount to be determined at trial;

D.    Compensatory damages in an amount to be determined at trial;

E.    Pre-judgment and post-judgment interest;

F.    Attorney's fees and costs;

G.     Appropriate injunctive relief; and

H.     Such other relief as justice may require.


**For Plaintiffs Emöke Beickert
and Stephanie Kushner:**

/s/ *Steven M. Warshawsky*
_____

Steven M. Warshawsky                Andrea Paparella
The Warshawsky Law Firm             Law Office of Andrea Paparella, PLLC
100 South Bedford Road, Suite 340   (pandemic mailing address)
Mount Kisco, NY  10549              4 Dunlap Street
Tel:  (914) 514-2329                Salem, MA  01970
Email: smw@warshawskylawfirm.com    Tel:  (617) 680-2400
Web:  www.warshawskylawfirm.com     Fax:  (914) 462-3287
                                    Email:  amp@andreapaparella.com
                                    Web: www.andreapaparella.com

Dated:  September 2, 2022