UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
EMÖKE BEICKERT and STEPHANIE KUSHNER, :
:
                Plaintiffs,    :
:
      -against-        :    **MEMORANDUM AND ORDER**
:       **22-CV-5265(DLI)(VMS)**
NEW YORK CITY DEPARTMENT OF      :
EDUCATION,    :
:
                Defendant.   :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On September 2, 2022, Emöke Beickert ("Beickert") and Stephanie Kushner ("Kushner," collectively, "Plaintiffs") commenced this action against the New York City Department of Education ("DOE" or "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, for failing to accommodate their religious beliefs by denying Plaintiffs' requests for a religious exemption to a COVID-19 vaccination requirement and terminating their employment for non-compliance. *See*, Compl., Dkt. Entry No. 1.

Before the Court is Defendant's motion to dismiss only Kushner's claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1] *See*, Def.'s Mem. of Law ("Def.'s Mem."), Dkt. Entry No. 15. Kushner opposed the motion. *See*, Kushner's Mem. of Law in Opp. ("Kushner's Opp."), Dkt. Entry No. 19. Defendant replied. *See*, Def.'s Reply ("Def.'s Reply"), Dkt. Entry No. 20. For the reasons set forth below, Defendant's motion is granted and Kushner's claim is dismissed with prejudice.

---

[1] On the same date, Defendant answered the Complaint as to Beickert's claim. *See*, Ans, Dkt. Entry No. 14.

**BACKGROUND**

Kushner was employed full time by the DOE as a special education teacher from September 17, 1999 until her termination on February 11, 2022. Compl. at ¶¶ 45, 47. Throughout her employment, Kushner was qualified for her position and observed the Jewish faith. *Id*. at ¶¶ 48, 51. In light of the COVID-19 pandemic, Kushner followed rigorous COVID-19 safety protocols during the 2020-2021 school year. *Id*. at ¶ 72. However, on August 23, 2021, after COVID-19 vaccines became available, the DOE notified Kushner that, "[e]ffective September 27, all DOE employees are required to provide proof that they have received at least one dose of the COVID-19 vaccine." *Id*. at ¶ 49. Soon thereafter, Kushner received multiple emails from DOE reminding her she needed to submit proof that she had received at least one dose of the COVID-19 vaccine by September 27, 2021 and had received a second dose within forty-five days of the first dose in order to remain compliant with the DOE's vaccination policy ("Vaccine Mandate"). *Id*. at ¶¶ 59, 60.

On September 20, 2021, Kushner requested a religious exemption from the DOE's Vaccine Mandate based on the biblical teaching that "'you should be very careful to protect your life.' (Deuteronomy 4:15)." *Id*. at ¶ 52. Kushner explained in her request that this biblical passage "means that [she] must care for [her] body and do nothing that [she] believe[s] may jeopardize [her] health[.]" *Id*. Kushner believes that long term testing is necessary to ensure that COVID-19 vaccines were safe, effective, and would not adversely affect her health. *Id*. Kushner also contends that she would have complied with any other preventative requirements such as COVID-19 testing, mask wearing, and other measures to continue teaching without having to receive the COVID-19 vaccine. *Id*.

On September 22, 2021, Kushner was notified that her religious exemption request had been denied for failing to meet the criteria for a religious based accommodation, but the notice did

not mention that the denial was based on an undue hardship to the DOE. *Id*. at ¶¶ 53, 55. According to Kushner, other teachers had been granted religious exemptions and afforded the opportunity to teach remotely. *Id*. at ¶ 72. On September 23, 2021, Kushner appealed the denial, but was not afforded a hearing. *Id*. at ¶ 56. Instead, her appeal was denied by an arbitrator who directed that any further inquiry be made to Kushner's union. *Id*. at ¶ 57.

On September 24, 2021, Kushner received an email from the DOE stating that, if she missed the September 27, 2021 deadline, she would be placed on Leave Without Pay ("LWOP") status beginning Tuesday, September 28, 2021. *Id*. at ¶ 61. However, the deadline to submit proof of vaccination was extended until October 1, 2021. *Id*. at ¶ 62. On October 2, 2021, Kushner received an email from the DOE stating that she was being placed on LWOP and was prohibited from reporting to her school site for failing to comply with the DOE's Vaccine Mandate. *Id*. at ¶ 63. Kushner contends that the DOE never engaged in a good faith interactive process with her to determine whether her religious exemption should be granted. *Id*. at ¶ 66. Ultimately, on February 11, 2022, the DOE terminated Kushner's employment for failing to obtain a COVID-19 vaccine. *Id*. at ¶ 73.

## LEGAL STANDARD

### I.   Dismissal For Failure To State A Claim – Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule (12)(b)(6)"), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## II. Title VII Standard

Under Title VII, it is unlawful for an employer to discriminate against an employee or prospective employee based on religion. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). Generally, claims arising under Title VII are subject to the three-step burden-shifting analysis established by the Supreme Court in *McDonnell Douglas* beginning with plaintiff's establishment of a prima *facie* case. 411 U.S. 792, (1973); *See e.g., Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005); *Johnson v. N.Y.C. Dep't of Ed.,* 39 F. Supp.3d 314, 321 (E.D.N.Y. 2014). However, the Second Circuit has adopted a modified, two-step inquiry for analyzing Title VII religious discrimination claims that emanate from a failure to accommodate. *See, Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (citing *Knight v. Connecticut Dept. Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).

An employee-plaintiff must allege plausibly a prima *facie* case under Title VII, specifically establishing that she: (1) has a bona fide religious belief conflicting with an employment requirement; (2) informed her employer of this belief; and (3) was disciplined for failure to comply with the conflicting employment requirement. *Id*. (citing *Knight*, 275 F.3d at 167). If the

employee-plaintiff satisfies these requirements, the employer "must offer [the employee] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Id.* (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).

### A. Bona fide Religious Belief

Title VII defines religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e-2(a)(1); *See also*, *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 291 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). When evaluating whether an individual's belief is religious, the Court's analysis is twofold: "'whether the beliefs professed by a [claimant] are sincerely held and whether they are, in h[er] own scheme of things, religious.'" *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

As to the first test, the sincerity of an individual's belief is a question of fact not proper for determination in a motion to dismiss. *See, e.g., Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 2023 WL 253580, at *19 (S.D.N.Y. Jan. 18, 2023) (citing *LeFevre*, 745 F.2d at 159 ("The need for a full exposition of facts is profound under such circumstances since determining a [person's] state of mind is 'an awesome problem,' capable of resolution only by reference to a panoply of subjective factors.") (citation omitted); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014); *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions.")). Instead, issues involving credibility must be addressed at trial. *See*, *Palin v. New York Times Company*, 940 F.3d 804, 812 (2d Cir. 2019).

As to the second requirement, whether the belief is religious, both the Supreme Court and the Second Circuit have cautioned courts regarding their limited function when determining whether religious beliefs are protected because defining "what is a 'religious' belief or practice is more often than not a difficult and delicate task." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981); *See also, Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 818 (2d Cir. 2003). Indeed, "[t]he resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others[.]" *Thomas*, 450 U.S. at 714. Thus, the question is whether the beliefs professed are, in the plaintiff's "own scheme of things, religious" and "[i]mpulses prompted by dictates of conscience as well as those engendered by divine commands are [ ] safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature." *LeFevre*, 745 F.2d at 158. Notably, "[a] person's 'intellectual' concerns [ ] are not safeguarded." *Rivera v. Choice Courier Systems, Inc.*, 2004 WL 1444852, at *5 (S.D.N.Y. June 25, 2004) (citing *Int'l Soc. For Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 440 (2d Cir. 1981)).

B.    **Undue Hardship**

"While an undue hardship is an affirmative defense, a defendant may raise it in a pre-answer motion to dismiss when the facts establishing it are clear." *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020). Recently, the Supreme Court clarified its 1977 opinion in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1997) and held that an employer suffers an undue hardship when "the accommodation would result in substantial increased costs in relation to the conduct of [an employer's] particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023) (finding unanimously that federal courts had established incorrectly that an undue hardship was something

6

more than a *de minimis* burden on the employer). Accordingly, to determine whether an employer would suffer an undue hardship, courts must "apply th[is] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id*. at 470-71 (internal question marks and citation omitted).

## DISCUSSION

Kushner contends that she has a bona fide religious belief that conflicts with the DOE's Vaccine Mandate because she observes the Jewish faith, and biblical teachings provide that "'[y]ou should be very careful to protect your life.' (Deuteronomy 4:15)." *See*, Compl. at ¶ 52; Kushner's Opp. at 10-13, 19. However, mere invocation of a biblical verse is insufficient to establish that she holds a religious belief against being vaccinated. *See, Mason*, 851 F.2d at 51. Instead, Kushner must show that her "espoused beliefs . . . do in fact stem from religious convictions and have not merely been framed in terms of religious belief so as to gain the legal remedy desired." *Sherr v. Northport-East Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 94 (E.D.N.Y. 1987). In an attempt to accomplish this, Kushner alleges that she could not comply with the Vaccine Mandate because: (1) Deuteronomy 4:15 means "[she] must care for [her] body and do nothing that [she] believe[s] may jeopardize [her] health;" and (2) she "believes that longer term testing, as with other vaccines and drugs, is necessary to ensure that the currently available COVID-19 vaccines are truly safe and effective and will not adversely affect her health." Compl. at ¶ 52; Kushner's Opp. at 10-13, 19.

The DOE contends that Kushner incorrectly interprets Deuteronomy 4:15. Def.'s Mem at 7. However, it is not the Court's role to question Kushner's interpretation of it. *See*, *Thomas*, 450 U.S. at 714; *Friedman*, 75 F. App'x at 818; *LeFevre*, 745 F.2d at 158. However, the Court does

7

concur with the DOE that Kushner implicitly acknowledges that Deuteronomy 4:15 does not prevent her from receiving the COVID-19 vaccine. Critically, Kushner's non-compliance with the Vaccine Mandate rests on her desire for COVID-19 vaccines to be subjected to "longer term testing, as with other vaccines and drugs . . . to ensure that the currently available COVID-19 vaccines are truly safe and effective and will not adversely affect [her] health." Compl. at ¶ 52. In other words, if COVID-19 vaccines were tested longer in order to ensure their safety and effectiveness like other vaccines and drugs, Kushner could get vaccinated and comply with the Vaccine Mandate. *Id*.

At this stage of the litigation, the Court accepts as true, as it must, all well pled factual allegations and draws all reasonable inferences in Kushner's favor. *LaFaro*, 570 F.3d at 47. However, it is clear that Kushner's refusal to comply with the Vaccine Mandate actually is based on her concerns about the safety and efficiency of COVID-19 vaccines, which she attempts to categorize as religious convictions by invoking Deuteronomy 4:15. Her true concerns do not qualify as a proper basis for a religious exemption. *See, e.g.*, *Check ex rel. MC v. New York City Dep't of Educ.*, 2013 WL 2181045, at *3 (E.D.N.Y. May 20, 2013) (holding that the plaintiff's "aversion to immunization ... based on her conviction that vaccines pose a severe medical risk to her child's welfare" fails to qualify as "proper basis for a religious exemption"); *See also, Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp.2d 414, 429-30 (E.D.N.Y. 2010) (holding that plaintiff's belief that "vaccinations may not be safe" was "not of a religious nature."), *aff'd* 500 F. App'x 16 (2d Cir. 2012); *See also, Sherr*, 672 F. Supp. at 94 (explaining that a claimant cannot merely frame their conviction in terms of religious belief to gain the legal remedy desired). Accordingly, Kushner fails to allege plausibly a bona fide religious belief.

Even if Kushner plausibly had alleged a bona fide religious belief, the Court also finds, as DOE contends, that DOE could not accommodate Kushner without suffering an undue hardship. Courts in this Circuit have found that vaccination against COVID-19, including the DOE's Vaccine Mandate, is a proper condition of employment. *See, e.g.*, *We the Patriots*, 17 F.4th at 294 (holding that vaccination against COVID-19 was a proper condition of employment for healthcare workers); *Broecker v. New York Dept. of Educ.*, 585 F. Supp.3d 299, 314–15 (E.D.N.Y. 2022) (holding that the DOE's Vaccine Mandate was a valid condition of employment for DOE employees); *Marciano v. de Blasio*, 589 F. Supp.3d 423, 431-33 (S.D.N.Y. 2022) (concluding that the New York City Board of Health and the Commissioner for the New York City Department of Health and Mental Hygiene have authority to require COVID-19 vaccination for New York City employees and contractors), *appeal dismissed sub nom., Marciano v. Adams*, 2023 WL 3477119 (2d Cir. May 16, 2023); *Garland v. New York City Fire Dep't*, 574 F. Supp.3d 120, 129 (E.D.N.Y. 2021) (concluding that COVID-19 vaccination was a valid condition of employment under the Health Commissioner's Order and applicable to New York City employees); *O'Reilly v. The Bd. of Educ. of the City School Dist. of the City of New York*, 2022 WL 180957, at *3 (N.Y. Sup. Ct., N.Y. Co. 2022) (holding that the DOE's Vaccine Mandate was a valid condition of employment for DOE employees). Importantly, the purpose of the DOE's Vaccine Mandate was to ensure the safety of those within its educational environment. *See*, *Kane v. de Blasio*, 623 F. Supp.3d 339, 348, 354 (S.D.N.Y. 2022).

While Kushner contends that the COVID-19 vaccine fails to prevent the spread of virus, courts in this Circuit have found otherwise. *See, Does 1-2 v. Hochul*, 632 F. Supp.3d 120, 127–28 (E.D.N.Y. 2022) (noting that, "[i]t is the consensus of reliable public health authorities that the COVID-19 vaccine *prevents the spread of the virus*[]" and "[a]ccording to the CDC, 'mRNA

9

*COVID-19 vaccines are highly effective in preventing SARS-CoV-2 infections in real-world conditions* among health care personnel, first responders, and other essential workers.'") (citation omitted) (emphasis added); *See also*, *Broecker*, 573 F. Supp.3d at 891 (finding that the DOE's Vaccine Mandate served an "obvious, significant governmental interest *in preventing transmission of the COVID-19 virus and protecting students*.") (emphasis added).

Nonetheless, despite the Vaccine Mandate being a proper condition of employment, Kushner maintains that she is entitled to a blanket exemption from the Vaccine Mandate because of her beliefs and because she could have taught either remotely or in-person while wearing protective equipment. *See*, Compl. ¶ 72; Kushner's Opp. at 9-10, 15-17. However, the Second Circuit has made clear that "Title VII does not require covered entities to provide the accommodation that [p]laintiffs prefer" nor does it allow a "blanket religious exemption allowing them to continue working at their current positions unvaccinated" against COVID-19. *We the Patriots USA, Inc.*, 17 F.4th at 275. Furthermore, while the Second Circuit explained that "it may be possible under [a vaccination mandate] for an employer to accommodate—not exempt— employees with religious objections[,]" for the reasons discussed below, the Court concurs with the DOE that allowing Kushner to continue teaching without being vaccinated would have imposed an undue hardship on the DOE. *We the Patriots USA, Inc.*, 17 F.4th at 370.

### A. The Safety of Others

Kushner was a classroom teacher, specifically and significantly a special education teacher in a New York City public school, for special needs students who would have required individualized attention and specialized instruction. *See, Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006) (explaining that the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*, requires "special education and related services tailored to

10

meet the unique needs of a particular child.") (internal quotation marks omitted).  Even if Kushner took precautions such as wearing gloves, masks, and a face shield, her presence as an unvaccinated individual would have presented "a risk to the vulnerable and still primarily unvaccinated student population" and other employees. *Kane*, 623 F. Supp.3d at 363; *See also, Dennison v. Bon Secours Charity Health Sys. Med. Grp.*, P.C., 2023 WL 3467143, at *5 n.4, *6 n.7 (S.D.N.Y. May 15, 2023) (finding an "*obvious hardship* associated with the increased health and safety risk posed to other employees" by remaining at their worksite unvaccinated against COVID-19) (emphasis added).

It is beyond cavil that safety within any work environment, especially an educational work environment, is of absolute importance.  Notably, the DOE's Vaccine Mandate helped to "prevent[] transmission of the COVID-19 virus and protect[ed] students." *Broecker*, 573 F. Supp.3d at 891.  Accordingly, Kushner's unvaccinated presence would have imposed "substantial increased costs in relation to the conduct of [the DOE's] particular business" by creating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment when COVID-19 vaccines had become available. *See*, *Groff*, 600 U.S. at 470; *Cf.*, *Dennison,* 2023 WL 3467143, at *5 n.4, *6 n.7; *Kane*, 623 F. Supp. at 357-58, 363. Accordingly, this alone would have established an undue hardship on the DOE warranting dismissal of Kushner's claim.

      **B.**    **Teaching Remotely**

Kushner further contends that the DOE allowed other teachers to teach remotely in order to accommodate their religious beliefs. *See*, Compl. at ¶ 72.  While, at this juncture, the Court accepts this allegation as true, most significantly and to Kushner's detriment, she does not allege

11

that those other teachers were similarly situated comparators, specifically, special education teachers.

As a special education teacher, Kushner's in-person presence within a special education classroom would have been of paramount value and importance to effectively teach and attend to the individualized needs of her special needs students. *See, Frank G.*, 459 F.3d at 363 (noting the IDEA requires "special education and related services [be] tailored to meet the unique needs of a particular child."). Accordingly, the DOE would face a significant burden and undue hardship by allowing Kushner to teach special education students remotely when in-person attendance had resumed because the particularized educational needs of her special needs students would be neglected. *See*, *Groff*, 2023 WL 4239256, at *11 (instructing courts to consider the nature of an employer's business when assessing whether an undue hardship exists); *Cf., Hakimah Shahid-Ikhlas v. The New York And Presbyterian Hosp., Inc.*, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023) (explaining that there was an increased cost placed upon the employer when the nurse-plaintiff was unable to perform patient care duties that require physical contact), *report and recommendation adopted sub nom.*, *Shahid-Ikhlas v. New York & Presbyterian Hosp., Inc.*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023).

Moreover, if Kushner were to work remotely, DOE would be required to hire another person to be present physically in the classroom to supervise these special education students and address any issues that required in-person intervention. This too would have caused an undue burden and hardship. *See*, *Hardison*, 432 U.S. at 84. Accordingly, based upon "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact[,]" it is clear that "granting [Kushner] an[y] accommodation would [have] result[ed] in substantial

increased costs in relation to the conduct of [the DOE's] particular business" of educating students and would have resulted in an undue hardship. *See*, *Groff*, 600 U.S. at 470.

### Futility of Amendment

It is well established in this Circuit that a district court may preclude a plaintiff from filing an amended complaint when doing so is futile. *See, Liu v. Intercept Pharms., Inc.*, 2022 WL 2165621, at *4 (2d Cir. June 16, 2022). Here, since the DOE would have suffered an undue hardship by offering Kushner an accommodation, any amendment would be futile. *See, Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

### CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for failure to state a claim is granted and Kushner's sole claim in this action is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
September 25, 2023

/s/
DORA L. IRIZARRY
United States District Judge